Franz MESSERSCHMIDT, Petitioner,

v.

PENNSYLVANIA STATE POLICE,
Respondent.

John A. Atkins, Petitioner,

v.

Pennsylvania State Police, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 7, 2001.
Decided Aug. 23, 2001.

John L. Heaton, Lebanon, for petitioner.

Joanna N. Reynolds, Harrisburg, for respondent.

Before DOYLE, President Judge,
FRIEDMAN, J., MIRARCHI, Jr., Senior
Judge.

DOYLE, President Judge.

Before this Court are the consolidated appeals of Franz Messerschmidt and John A. Atkins from orders of Administrative Law Judge (ALJ) Ronald Stanko, which denied their applications for fees and expenses under the Costs Act,[1] and denied their requests to correct criminal records.

On November 7, 1998, Messerschmidt attempted to purchase a firearm from a gun dealer in New Jersey; however, he was denied the right to purchase the weapon when an instant criminal record check indicated a prior criminal conviction.[2] The Pennsylvania State Police (PSP) had a criminal history record showing that Messerschmidt was found guilty of larceny in 1961 and that a fine, costs and restitution were imposed on him.[3] This criminal history was based on information printed on the back of fingerprint cards in PSP's files. (Reproduced Record (R.R.) at 177a–178a; 189a–190a.) The fingerprint cards stated that Messerschmidt and an accomplice, John Atkins, were arrested for the crime of larceny on October 25, 1961, and that Messerschmidt and Atkins paid fines, costs, and restitution.

Messerschmidt appealed the denial of his right to purchase a firearm to PSP. He also challenged the accuracy of his criminal history under Section 9152 of the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. § 9152. After Messerschmidt alerted him to the existence of PSP's records, Atkins also filed an appeal with PSP under the CHRIA challenging the accuracy of his criminal record. Messerschmidt and Atkins argued in their appeals that they were never adjudicated guilty of the offense of larceny. PSP, however, denied their appeals.

Messerschmidt and Atkins (Petitioners) appealed PSP's decisions to the Attorney General. Upon the motion of Petitioners' counsel, the matters were consolidated for hearing before ALJ Ronald Stanko. At the hearing, Petitioners explained that, on October 25, 1961, they purchased an antique automobile for $25 (paid for in advance by mail), but when they went to retrieve it Petitioners decided they no longer wanted the car. Petitioners could not find the owner of the vehicle and decided to recapture the $25 they had previously paid by taking some of the vehicle owner's scrap metal. The owner complained to PSP, and, subsequently, PSP located Petitioners and directed them to go to the Quakertown barracks, where they were fingerprinted. Petitioners then went to a justice of the peace, where Petitioners paid $25 to compensate the owner of the scrap metal. Petitioners' testimony reveals that PSP and the justice of the peace acted in a rather informal manner

---

1. Act of December 13, 1982, P.L. 1127, *as amended*, 71 P.S. §§ 2031–2035, commonly known as the Costs Act. A party dissatisfied with an agency's decision involving a fee determination is required by the Costs Act to petition the appropriate court for leave to appeal that determination. Section 3(e) of the Costs Act, 71 P.S. § 2033(e). On December 29, 2000, we granted leave to Messerschmidt and Atkins to appeal the denial of their Costs Act claims to this Court.

2. Gun dealers are required to have the State Police perform an instantaneous criminal record check before completing the sale of a firearm. Section 6111 of the Uniform Firearms Act, 18 Pa.C.S. § 6111.

3. Under 18 U.S.C. § 922(g), it is unlawful for any person who has been convicted of a crime punishable by a term of imprisonment exceeding one year to receive a firearm that has been shipped or transported in interstate commerce. In 1961, a larceny conviction carried a possible term of imprisonment not to exceed five years and/or a fine not to exceed $2000. Therefore, as a result of his criminal activity, Messerschmidt was disqualified under federal law from purchasing the firearm.

during the above events, PSP allowed Petitioners to drive themselves to the Quakertown barracks and to drive themselves to the justice of the peace, and the justice of the peace resolved the matter in the living room of his home.

PSP introduced the fingerprint cards into evidence and offered testimony on the interpretation of the information on the cards and on PSP's procedures and record keeping system.

After considering the evidence submitted at the hearing, ALJ Stanko sustained Petitioners' appeals, finding that there was insufficient evidence presented to support PSP's determination that Petitioners were convicted of larceny. In his orders, ALJ Stanko, among other things, directed PSP to correct its official criminal records. PSP did not appeal ALJ Stanko's orders to this Court.

PSP subsequently amended Petitioners' criminal records to remove the words "guilty" and "fines." The records, as amended, indicate that Petitioners were arrested for larceny, with a disposition of "costs" and "restitution," which is characterized by PSP as a "non-conviction disposition." PSP explained its amendment as follows:

> [P]etitioners specifically sought to have (1) the felony larceny conviction deleted from their criminal history record, (2) Mr. Messerschmidt's firearms denial reversed, and (3) all previously-enjoyed rights restored. The removal of 'GUILTY—COSTS' [sic] from the petitioners records satisfied both their request and Judge Stanko's order. Moreover ... 'COSTS—RESTITUTION' on the criminal history record is a 'non-conviction' disposition, which (1) deletes the felony larceny conviction, (2) reverses Mr. Messerschmidt's firearms denial, and (3) restores all of the petitioners' previously enjoyed rights.

(Letter of PSP counsel Joanna Reynolds, dated 8/4/99, at 1; R.R. at 240a.)

Petitioners, then, petitioned for an award of fees and expenses pursuant to the Costs Act, and filed a petition to delete references to their arrest and case disposition information from their criminal records. ALJ Stanko concluded that Petitioners did not qualify for an award of fees and costs under the Costs Act, because PSP's actions were substantially justified and did not rise to the level of an adversary adjudication. He also noted that Petitioners, and not PSP, initiated the original action. ALJ Stanko denied the petition to correct their criminal records, concluding that Petitioners were seeking expungement of "non-conviction data" and that he had no authority to order the expungement of Petitioners' records

On appeal, Petitioners contend that ALJ Stanko erred (1) by failing to conclude that they were eligible for an award of fees and costs under the Costs Act, and (2) by failing to order PSP to delete arrest, disposition, and conviction data from Petitioners' records.

■ Section 3(a) of the Costs Act, 71 P.S. § 2033(a), provides as follows:

> Except as otherwise provided or prohibited by law, a Commonwealth agency that **initiates** an adversary adjudication shall award to a prevailing party, other than the Commonwealth, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer finds that the position of the agency, as a party to the proceeding, was substantially justified or that special circumstances made an award unjust. (Emphasis added.)

■ Before a party may be awarded attorney fees and costs under the Costs Act, the following "three prerequisites must exist ... 1) *the agency must have*

*initiated an adversary adjudication,* 2) the party requesting the award must be a prevailing party, and 3) there must be a determination that the position of the agency was not substantially justified." *Staub v. Department of State, State Registration Board for Professional Engineers, Land Surveyors and Geologists,* 710 A.2d 137, 139–40 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 557 Pa. 657, 734 A.2d 863 (1999) (emphasis added).

Petitioners argue that they are entitled to an award under the Costs Act because of PSP's unreasonable behavior during the proceedings below. They assert that PSP, based on nothing more than an uncorroborated entry on a 37-year old fingerprint card, denied Messerschmidt the opportunity to purchase a firearm, and then engaged in stonewalling that forced Petitioners to litigate this matter. They point out that eight letters were sent to PSP that contained information contradicting PSP's position, but PSP never attempted to reconcile its position with those facts. Further, PSP failed to disclose that it had lost two similar cases before ALJ Stanko [4]; Petitioners note that PSP's appeals to this Court from the decisions in those cases were discontinued.

The Commonwealth, on the other hand, contends that Petitioners are ineligible for an award under the Costs Act for the reason that it was the Petitioners who initiated the actions here. And, even if PSP had initiated actions against Petitioners, PSP asserts that its position was substantially justified.

We agree with the Commonwealth because the record reveals that it was the Petitioners, not the Commonwealth, who initiated the litigation in these matters by challenging the accuracy of their criminal records. We also note that, while the presence of the criminal records in PSP's files prevented Petitioners from purchasing firearms, the fact that the records disqualified them under 18 U.S.C. § 922(g) from buying weapons is not, in our view, the equivalent of a finding that PSP initiated an adversary adjudication. Hence, Petitioners have failed to satisfy the first prerequisite for an award under the Costs Act. *Staub.*

Further, the position of an agency is "substantially justified" when the position has a reasonable basis in law and fact. Section 2 of the Costs Act, 71 P.S. § 2032. In our view, PSP had a reasonable basis in law and fact to deny Petitioners' challenges to the accuracy of their criminal records. Petitioners' testimony shows (1) that a State Trooper contacted Petitioners on October 25, 1961 and directed them to report to the Quakertown barracks, (2) that they were fingerprinted at the barracks, (3) that they were taken before a justice of the peace, and (4) that Petitioners paid the justice of the peace $25 to cover the cost of the scrap metal that they had taken. The fingerprint cards in PSP's possession indicated that Petitioners were arrested for the crime of larceny on October 25, 1961, paid fines and costs, and made restitution, from which PSP reasonably inferred that a conviction was entered. In light of the above facts, we conclude that Petitioners and PSP had a reasonable dispute over the final disposition of the larceny charges, and that that dispute was not finally resolved until ALJ Stanko determined after a hearing that the evidence did not support a finding of guilt.

Petitioners' argument is focused on PSP's conduct, which they allege demon-

---

**4.** *Lanza v. Pennsylvania State Police,* No. 99 FAD00003 (successful challenge to a criminal record of a conviction for larceny); *Crawford v. Pennsylvania State Police,* No. 99 CHA00005 (successful challenge to a criminal record of a conviction for burglary).

strates that PSP engaged in stonewalling behavior and other unreasonable acts that delayed the resolution of these matters, which were only resolved after a hearing. However, although it appears that PSP was unresponsive in its dealings with Petitioners, we do not agree with Petitioners that PSP deliberately delayed the resolution of these cases or engaged in other improper behavior that would justify an award of fees and costs. Moreover, in light of our conclusion that PSP was substantially justified in denying Petitioners' challenges, this argument must fail.[5]

Next, Petitioners contend that ALJ Stanko erred in failing to order further correction of their criminal records.

■ ALJ Stanko ordered Petitioners' criminal records corrected, and, in response, PSP amended Petitioners' criminal histories to remove references to a conviction by deleting the words "guilty" and "fines." The amended records state that Petitioners were arrested for larceny, with a disposition of "costs" and "restitution." The content of Petitioners' amended criminal histories is supported by the evidence received at the hearing before ALJ Stanko. While Petitioners deny that the evidence demonstrates that they were arrested or charged with larceny, the fingerprint cards clearly state that Petitioners were

arrested. Petitioners' testimony indicates that PSP, after they arrived at the barracks, fingerprinted them and directed them to go before a justice of the peace, which shows that PSP had placed them into custody.[6] Petitioners further admitted that they paid the justice of the peace $25 to compensate the owner of the scrap metal, corroborating the notation on the fingerprint cards that they made restitution as ordered by a justice of the peace. As stated by ALJ Stanko, "the facts presented leave little doubt that Petitioners' [sic] were involved in an incident that led to police and judicial intervention," and we believe that the amended criminal histories accurately reflect the events of October 25, 1961.

■ Additionally, Petitioners, recognizing that a common pleas court has the authority to expunge non-conviction data from criminal records under Section 9122 of the CHRIA, 18 Pa.C.S. § 9122, assert that there is nothing in the CHRIA that prohibits an ALJ from granting such relief in an appeal to the Attorney General. We disagree. Section 9122 refers to *courts* as having the authority to expunge records under the CHRIA, and there is no language in Section 9122 granting that power to an ALJ acting on behalf of the Attorney General under Section 9152 of the

---

5. Additionally, we do not agree with Petitioners that ALJ Stanko's decisions in *Lanza* and *Crawford*, and PSP's failure to disclose the existence of those decisions to Petitioners or to act in compliance with them, is a basis to grant fees under the Costs Act. First, the question in the instant cases—whether Petitioners were convicted of larceny in 1961—was a mixed question of law and fact, to be resolved using the record developed at the hearing before ALJ Stanko. Second, *Lanza* and *Crawford* did not establish, as a matter of law, the minimum quantum of evidence needed by PSP to support its criminal records. Third, because neither *Lanza* nor *Crawford* are before this Court, we do not have jurisdiction to

consider the issue of whether PSP complied with the orders in those cases; nor do we believe that the Costs Act is the proper vehicle for us to review PSP's general policies for handling challenges to the accuracy of criminal records.

6. Messerschmidt testified that PSP never placed him under arrest, but he also testified in this regard:

Q. Did you leave Bucks County that day [October 25, 1961] under the impression that you had been arrested for larceny?
A. Certainly did.
(Notes of Testimony at 28; R.R. at 33a.)

CHRIA.[7] If they so desire, Petitioners are free to file a petition with a common pleas court to expunge the remaining information in their records.

Accordingly, the orders of ALJ Stanko are affirmed.

### ORDER

**NOW**, August 23, 2001, the orders of Administrative Law Judge Ronald Stanko in the above-captioned matters are hereby affirmed.

**7.** Petitioners argue that this Court implicitly recognized that an ALJ may expunge a record in accordance with Section 9122 of the CHRIA in *Clark v. Pennsylvania State Police*, 760 A.2d 1202 (Pa.Cmwlth.2000). In *Clark*, which was an appeal from an ALJ, we discussed expungement under Section 9122 and noted that the appellant did not qualify for that relief. However, we never reached the issue in *Clark* as to whether an ALJ has the authority to expunge a criminal record; nor do we read that decision as implying that the ALJ has the power to grant such relief under Section 9122.